UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------

WILLIE BOGAN,

                        Petitioner,

        v.

MARK BRADT, *Superintendent of Attica
Correctional Facility*,

                        Respondent.
-----------------------------------------------------------------

**MEMORANDUM & ORDER**
11-CV-1550 (MKB) (LB)

MARGO K. BRODIE, United States District Judge:

      Petitioner Willie Bogan, proceeding *pro se*, brings the above-captioned petition for a writ

of habeas corpus pursuant to 28 U.S.C. § 2254, alleging that his confinement in state custody

violates the United States Constitution. (Am. Pet., Docket Entry No. 8.)[1] Petitioner's claims

arise from a judgment of conviction after a jury trial in New York Supreme Court, Kings County,

for robbery in the first degree. (*Id.*) On May 1, 2014, the Court referred the petition to

Magistrate Judge Lois Bloom for a report and recommendation. (Order dated May 1, 2014.) By

report and recommendation dated November 12, 2014 ("the R&R"), Judge Bloom recommended

that the Court deny the petition. (R&R 1, Docket Entry No. 10.) On November 29, 2014,

Petitioner objected to the R&R. (Pet'r Obj. to R&R ("Pet'r Obj."), Docket Entry No. 12.)

For the reasons discussed below, the Court adopts Judge Bloom's R&R and denies the petition.

---

[1] Before Respondent answered the petition, (Docket Entry No. 1), Petitioner filed the amended petition, (Docket Entry No. 8). Because the amended petition is not consecutively paginated, all citations to pages of the amended petition refer to the electronic document filing system (ECF) pagination.

## I. Background

The Court assumes familiarity with the facts of the case as set forth in detail in the R&R. On March 31, 2007, two men knocked at the door of Ernesto Luciano's apartment. (T. 44:17–45:13).[2] After Luciano opened the door, the two men pushed him down and entered the apartment. (T. 45:13–16.) One of the men restrained Luciano at gun point, while the other rifled through the apartment and searched Luciano's person. (T. 47:1–8; 49:13–51:14.) The men escaped with Luciano's wallet and some cash. (T. 52:4–10.) Luciano subsequently called 911. (T. 53:7–13.)

Luciano told Officer Gabriel Dobles, a responding officer, that one of the men was named "Willie" and lived in the building, and that he also knew the second man. (H. 7:4–9:18). The same day, Luciano was brought to the police station, where he was shown photographs of potential suspects in the New York Police Department ("NYPD") Photo Manager System. (H. 22:9–25.) Luciano identified one suspect as Willie Bogan. (H. 23:12–14.) The following day, Luciano returned to the police station and, using the NYPD Photo Manager System, identified the second suspect as Torrell Brown. (H. 12:15–15:7.) Luciano also identified Brown in a lineup two days later. (H. 15:23–17:17.) Both men were arrested and charged with robbery. (T. 238:1–240:25.)

### a. Trial

Brown and Petitioner were tried jointly. (T. 230:9–14.) Before the trial, Brown's counsel requested a suppression hearing, seeking to challenge the procedures the NYPD used when

---

[2]  "T." refers to the transcript of Petitioner's jury trial held in New York Supreme Court, Kings County from April 7, 2008 to April 10, 2008. (Docket Entry Nos. 4-6–4-7). "H." refers to the transcript of the pretrial hearing held on April 2, 2008, including Petitioner's co-defendant's suppression hearing and motions *in limine*. (Docket Entry No. 4-4). "V." refers to the transcript of the April 7, 2008 jury voir dire. (Docket Entry No. 4-5.) The Court refers to the original page numbers, not the ECF page numbers, in the trial transcript and other state court documents.

Luciano identified Brown. (H. 2:17–22, 31:2–32:8.) At the conclusion of the hearing, the trial judge denied the motion. (H. 34:4–35:23.) Petitioner was not at the hearing, but his counsel was present. (H. 35:24–36:17.)

Luciano was the only witness presented at trial who identified Brown and Petitioner as the assailants. Luciano testified that he recognized Brown and Petitioner as the assailants because they were his neighbors and he had known them since childhood. (T. 46:7–48:18.) Luciano explained that Brown and Petitioner had pulled their jackets over the bottom portion of their faces in an attempt to conceal their identities. (T. 47:17–48:14.) However, Luciano was able to identify them because they were in close proximity during the event, and his apartment was brightly lit. (T. 55:2–56:23.)

Officer Isaias Aleica testified that he was dispatched to respond to an incident that occurred at Luciano's apartment. (T. 85:9–10, 86:21–87:14.) When he arrived at the apartment, he spoke with Luciano, who provided him with information of the incident and the identity of the assailants. (T. 87:15–25.) Luciano stated that during the incident, the assailants wore "jackets [that] were zipped up as high as they can go, covering the bottom portion of their faces"; they were not wearing masks. (T. 88:1–25.) After taking Luciano's statement, Officer Aleica returned to the police station and completed a preliminary handwritten report detailing the information he received from Luciano (the "scratch report"). (T. 92:21–94:3, 97:12–99:4.) Officer Aleica's supervisor directed him to complete a typewritten report, and, contrary to Luciano's statement at the scene, to specify that the assailants wore masks instead of wearing their jackets over the bottom portion of their faces. (T. 99:19–101:4, 104:8–106:12, 119:2–10.) Officer Aleica followed his supervisor's orders. (T. 118:12–24.) The typewritten report was filed and the scratch report was discarded. (T. 118:12–24.)

### b. Jury instructions and deliberation

At the close of the evidence and arguments, the trial judge instructed the jury that it was the State's burden to prove both defendants' guilt beyond a reasonable doubt. (T. 227:15–242:4.) The trial judge instructed the jury that the State was required to prove that a crime occurred and that the defendants were correctly identified as the assailants. (T. 230:1–235:6.) As to the identification testimony, the trial judge explained that "[u]nder our law, the testimony of even one witness is sufficient to support a guilty verdict if you believe it beyond a reasonable doubt." (T. 230:1–17.)

During deliberations, the jury sent a note to the trial judge asking if it was "allowed to reach a decision based solely on the testimony of one witness." (T. 248:3–8.) The trial judge discussed the jury's note with the lawyers for both parties. (T. 248:9–251:22.) The trial judge informed the parties that he intended to reply to the jury's note by restating his earlier instruction, which read:

> it makes no difference the number of witnesses who testify for one side or the other. It's not the quantity of testimony that counts, it's the quality. Under our law the testimony of one witness is sufficient to support a guilty verdict if you believe it beyond a reasonable doubt.

(T. 248:9–16.) Petitioner's trial counsel requested that the trial judge also instruct the jury that "each juror should hold to their verdict if they feel that there is a doubt. . . . It's their right to hold to their verdict if they feel it is a reasonable verdict." (T. 248:21–249:12.) Petitioner's trial counsel explained that he wanted the additional instruction because he was concerned that hold-out jurors may improperly change their decision. (T. 249:4–12.) The trial judge declined the suggestion by Petitioner's trial counsel and reread the earlier instruction regarding one-witness testimony to the jury. (T. 249:13–251:22.) The jury subsequently returned a guilty verdict. (T. 253.)

### c. Post-conviction challenges

Petitioner timely appealed his conviction to the New York Supreme Court, Appellate

Division, Second Department (the "Appellate Division"). *See People v. Bogan*, 78 A.D.3d 855

(N.Y. App. Div. 2010). Petitioner raised claims of ineffective assistance of counsel, improper

jury instructions, and a failure to preserve evidence. *See id.* at 855–56. The Appellate Division

held that Petitioner's claims regarding the jury instructions were "unpreserved for appellate

review" because Petitioner's trial counsel failed to object to the instructions before the trial court.

*See id.* at 855. Alternatively, the Appellate Division held that the jury instructions correctly

stated the law. *See id.* at 856. The Appellate Division denied Petitioner's remaining claims on

the merits and affirmed his conviction. *See id*. Petitioner sought leave to appeal to the New

York Court of Appeals, which was denied. *See People v. Bogan*, 16 N.Y.3d 742 (2011).

Petitioner filed a timely petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254,

raising the same claims he raised before the Appellate Division. (Am. Pet. 2–20.) On November

12, 2014, Judge Bloom issued the R&R, recommending that the Court deny the petition. (R&R

1.) Petitioner timely objected to the R&R. (Pet'r Obj. 1.)

## II. Discussion

### a. Standard of review

#### i. Report and recommendation

A district court reviewing a magistrate judge's recommended ruling "may accept, reject,

or modify, in whole or in part, the findings or recommendations made by the magistrate judge."

28 U.S.C. § 636(b)(1)(C). When a party submits a timely objection to a report and

recommendation, the district court reviews *de novo* the parts of the report and recommendation

to which the party objected. *Id*.; *see also United States v. Romano*, 794 F.3d 317, 340 (2d Cir.

2015). The district court may adopt those portions of the recommended ruling to which no

timely objections have been made, provided no clear error is apparent from the face of the record. *John Hancock Life Ins. Co. v. Neuman*, No. 15-CV-1358, 2015 WL 7459920, at *1 (E.D.N.Y. Nov. 24, 2015). The clear error standard also applies when a party makes only conclusory or general objections, or simply reiterates its original arguments. *Chime v. Peak Sec. Plus, Inc.*, 137 F. Supp. 3d 183, 187 (E.D.N.Y. 2015) ("General or conclusory objections, or objections which merely recite the same arguments presented to the magistrate judge, are reviewed for clear error." (citation omitted)); *see also DePrima v. N.Y.C. Dep't of Educ.*, No. 12-CV-3626, 2014 WL 1155282, at *3 (E.D.N.Y. Mar. 20, 2014) (collecting cases).

### ii. Habeas

Under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), an application for a writ of habeas corpus by a person in custody pursuant to a state court judgment may only be brought on the grounds that his or her custody is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A petitioner is required to show that the state court decision, having been adjudicated on the merits, is either "contrary to, or involved an unreasonable application of, clearly established Federal law" or "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see also Kernan v. Hinojosa*, 578 U.S. ---, ---, 136 S. Ct. 1603, 1604 (May 16, 2016) (per curiam); *Hittson v. Chatman*, 576 U.S. ---, ---, 135 S. Ct. 2126, 2126 (Jun. 15, 2015); *Johnson v. Williams*, 568 U.S. ---, ---, 133 S. Ct. 1088, 1091 (Feb. 20, 2013). "An 'adjudication on the merits' is one that '(1) disposes of the claim on the merits, and (2) reduces its disposition to judgment.'" *Bell v. Miller*, 500 F.3d 149, 155 (2d Cir. 2007) (quoting *Sellan v. Kuhlman*, 261 F.3d 303, 313 (2d Cir. 2001)); *see also Kernan*, 578 U.S. at ---, 136 S. Ct. at 1606; *Harrington v. Richter*, 562 U.S. 86, 98 (2011). Under the section 2254(d) standards, a state court's decision must stand as long as "fairminded

jurists could disagree on the correctness of the . . . decision." *Richter*, 562 U.S. at 101 (2011) (citation and internal quotation marks omitted).

For the purposes of federal habeas review, "clearly established law" is defined as the "the holdings, as opposed to dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A state court decision is "contrary to," or an "unreasonable application of," clearly established law if the decision (1) is contrary to Supreme Court precedent on a question of law; (2) arrives at a conclusion different than that reached by the Supreme Court on "materially indistinguishable" facts; or (3) identifies the correct governing legal rule but unreasonably applies it to the facts of the petitioner's case. *Id.* at 412–13. In order to establish that a state court decision is an unreasonable application, the state court decision must be "more than incorrect or erroneous." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). The decision must be "objectively unreasonable." *Id.* In addition, factual determinations made by the state court are presumed to be correct, and the petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### b. Unopposed recommendations

Judge Bloom recommended that the Court deny Petitioner's challenges to his sentencing, his trial counsel's failure to request a suppression hearing, the jury instruction concerning the assessment of the basis of a witness's knowledge, and his absence from the courtroom when the trial judge read the jury note. (R&R 9–13, 15–18.) Petitioner has not objected to those recommendations. (*See* Pet'r Obj. 1–12.) The Court has reviewed the unopposed portions of the R&R, and, finding no clear error, the Court adopts Judge Bloom's recommendations as to these issues pursuant to 28 U.S.C. § 636(b)(1)(C).

### c.  Petitioner's objections

Petitioner objects to Judge Bloom's recommendation that the Court deny the petition as to three of his claims.  First, Petitioner asserts that Judge Bloom erred in finding that Petitioner's claim regarding the failure to preserve evidence was not a basis for habeas relief on the grounds that he failed to allege a violation of a federal right.  (Pet'r Obj. 2–6.)  Second, Petitioner argues that Judge Bloom erred in finding that Petitioner received constitutionally effective counsel. (*See id.* at 10–12.)  Petitioner argues that his trial counsel was ineffective because his counsel failed to object to Petitioner's absence from his co-defendant's suppression hearing and failed to object to the jury instructions.  (*See id.*)  Finally, Petitioner contends that Judge Bloom erred in finding that the trial judge accurately stated the law in giving the supplemental jury instruction regarding one-witness identification.  (*See id.* at 7–10.)  The Court addresses each of Petitioner's objections below.

### i.  Failure to preserve evidence

Petitioner asserts that Officer Aleica's destruction of the scratch report violated his Fourteenth Amendment right to procedural due process and his Sixth Amendment right to confrontation.  (Pet'r Obj. 2.)  Petitioner argues that his constitutional rights were violated because he could not impeach witnesses with the contents of the scratch report and could not use the scratch report to undermine the State witnesses' credibility.  (*See id.* at 2–6.)  Petitioner also argues that the trial judge failed to remedy the violations by refusing to issue an adverse inference instruction regarding the missing report.  (*See id.* at 2.)  In arguing his appeal before the Appellate Division, Petitioner relied on New York state law, *People v. Rosario*, 9 N.Y.2d 286 (1961), and the Fourteenth Amendment to support his scratch-report claim.  (Pet'r App. Div. Br. 16, Docket Entry No. 4-2.)  The Appellate Division held that Petitioner "failed to establish that

he was prejudiced by the loss of certain *Rosario* material." *Bogan*, 78 A.D.3d at 856 (citation omitted).

When a petitioner raises a claim before a state court that is grounded in both state and federal law but the state court does not explicitly address the federal claim in its decision, there is a rebuttable presumption that the federal claim was adjudicated on the merits. *See Johnson*, 568 U.S. at ---, 133 S. Ct. at 1096. Federal courts then "must determine what arguments or theories . . . could have supported the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of th[e] [Supreme] Court." *Richter*, 562 U.S. at 102; *see also Johnson*, 568 U.S. at ---, 133 S. Ct. at 1094 ("[W]e see no reason why the *Richter* presumption should not also apply when a state-court opinion addresses some but not all of a defendant's claims.").

The Court presumes that Petitioner's Fourteenth Amendment claim was adjudicated on the merits, even though the Appellate Division failed to discuss the Fourteenth Amendment in its decision. *See Johnson*, 568 U.S. at ---, 133 S. Ct. at 1094 (holding that there is "no reason why the *Richter* presumption should not also apply when a state-court opinion addresses some but not all of a defendant's claims," where the state court only addressed the state law grounds and not the federal grounds of the petitioner's claims). In addition, although Petitioner's Fourteenth Amendment arguments have not been articulated clearly, because he is proceeding *pro se*, the Court liberally construes his arguments. *See Wiley v. Kirkpatrick*, 801 F.3d 51, 62, 70 (2d Cir. 2015). Accordingly, the Court will first discuss Petitioner's *Rosario* claim and then review Petitioner's Fourteenth Amendment claim as an assertion that the State's failure to preserve the

scratch report violated the rule established by *Arizona v. Youngblood*, 488 U.S. 51, 57 (1988),[3] but nevertheless finds his arguments unavailing. Finally, the Court will discuss Petitioner's claim that the missing scratch report violated the Sixth Amendment's Confrontation Clause, which was not presented to the Appellate Division, (Pet'r App. Div. Br. 16–29), and is therefore unexhausted and procedurally defaulted.

### 1. The *Rosario* claim is non-cognizable in habeas

Petitioner argues that the State violated *Rosario* when it discarded and failed to disclose the scratch report. (Pet'r Obj. 2–6.) The *Rosario* rule requires the State to turn over any material that contains statements made by one of the State's witnesses and is related to the subject matter of the witness's testimony. *See* 9 N.Y.2d at 289–91. Construing Petitioner's arguments to make the strongest claim possible, Petitioner's claim may be grounded in the federal analog to the *Rosario* rule — *Jencks v. United States*, 353 U.S. 657 (1957). The *Jencks* rule requires that the government provide a defendant with all statements related to the subject matter of government witnesses' testimony. *See id.* at 672.

Federal courts may only provide habeas relief when a petitioner is confined in violation of federal law or the United States Constitution as interpreted by the United States Supreme Court. *See* § 2254(d); *see also Richter*, 562 U.S. at 98, 100. "[F]ederal habeas corpus does not lie for errors of state law . . . . In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (citations omitted). In determining whether the state court's decision to imprison a petitioner is unconstitutional, federal courts "need only apply the

---

[3] To establish a *Youngblood* violation, a petitioner must show that the government lost or destroyed evidence that was relevant to the petitioner's prosecution and did so in bad faith. *Arizona v. Youngblood*, 488 U.S. 51, 57 (1988).

constitutional standards that prevailed at the time the original proceedings took place." *Teague v. Lane*, 489 U.S. 288, 306 (1989) (citation omitted); *see also Williams*, 529 U.S. at 412.

The Court may not grant habeas relief on the basis of an alleged violation of New York state law as articulated in *Rosario*. *See Estelle*, 502 U.S. at 67; *Landy v. Costello*, 141 F.3d 1151, No. 97-CV-2433, 1998 WL 105768, at *1 (2d Cir. Mar. 9, 1998) ("To the extent that this claim is based on a *Rosario* violation, it must fail, because a habeas petition can only be granted to remedy some violation of *federal law*; the obligation to turn over *Rosario* material arises under *state* law."); *Curry v. Bennett*, No. 02-CV-3655, 2003 WL 22956980, at *12 (E.D.N.Y. Oct. 17, 2003) ("Petitioner's claim that the State prosecutor failed to disclose *Rosario* material does not present an issue of federal dimension and, accordingly, must be denied."). Nor may the Court grant habeas relief on an alleged violation of the *Jencks* rule, given that the *Jencks* rule is only an evidentiary rule and not a constitutional one. *See Valentin v. Mazzuca*, No. 05-CV-298, 2011 WL 65759, at *7 n.2 (W.D.N.Y. Jan. 10, 2011) (finding that a petitioner cannot obtain habeas relief on a *Jencks* claim because "the *Jencks* rule has not been construed as constitutional in nature" (citation omitted)); *Herrera v. Artus*, No. 06-CV-1715, 2007 WL 29392, at *2 (E.D.N.Y. Jan. 4, 2007) (denying a *Jencks* claim raised in a habeas petition because the *Jencks* rule "does not form a ground for federal habeas corpus relief"); *Boyd v. Hawk*, No. 94-CV-7121, 1996 WL 406680, at *7 (S.D.N.Y. May 31, 1996) (denying a habeas petition because "*Jencks* was decided under the Supreme Court's rule-making powers for the administration of justice in the federal courts rather than as a matter of federal constitutional law") (adopting report and recommendation); *Morrison v. McClellan*, 903 F. Supp. 428, 429 (E.D.N.Y. 1995) (denying a *Jencks* claim raised in a petition for a writ of habeas corpus because the state's failure to turn over prior statements by its witnesses does not constitute a constitutional violation (citing *Palermo v. United States*,

360 U.S. 343, 345 (1959))); *see also Lincoln v. Sunn*, 807 F.2d 805, 816 (9th Cir. 1987) (holding

that habeas relief cannot be afforded on the basis of a *Jencks* claim because "[t]he Supreme

Court's decision in *Jencks* and the Jencks Act state evidentiary rules governing federal trials, and

do not invoke constitutional considerations"); *Calley v. Callaway*, 519 F.2d 184, 199 (5th Cir.

1975) (holding that habeas relief cannot be afforded when a petitioner asserts "only an error of

law (an asserted violation of the Jencks Act), rather than a constitutional defect"). Accordingly,

Petitioner's arguments relying on *Rosario* and *Jencks* are non-cognizable in habeas because

those arguments fail to allege the violation of a constitutional right.

### 2. Petitioner failed to allege facts sufficient to support a *Youngblood* claim

Petitioner argues that the State violated his right to due process because it failed to

preserve the scratch report completed by Officer Aleica. (Pet'r Obj. 2–3.) Petitioner explains

that his defense theory was "based on the victim's misidentification of his attackers." (*Id.* at 3.)

Petitioner contends that Luciano's statements in the scratch report identifying Petitioner were

inconsistent with the statements in the final typewritten report submitted by Officer Aleica. (*Id.*

at 4–5.) Petitioner argues that the missing scratch report, paired with the lack of an adverse

inference instruction, prevented Petitioner from effectively attacking Luciano's testimony. (*Id.* at

6.) Because the Appellate Division failed to discuss the Fourteenth Amendment claim, the Court

"must determine what arguments or theories . . . could have supported the state court's decision;

and then it must ask whether it is possible fairminded jurists could disagree that those arguments

or theories are inconsistent with the holding in a prior decision of th[e] [Supreme] Court."

*Richter*, 562 U.S. at 102; *Johnson*, 568 U.S. at ---, 133 S. Ct. at 1094.

The Due Process Clause of the Fourteenth Amendment requires a prosecutor to turn over

all material evidence. *See Youngblood*, 488 U.S. at 55. Due process also mandates that the

government preserve any evidence relevant to the prosecution of the case. *See id.* at 57. The government's failure to preserve relevant evidence violates due process when the evidence is lost or destroyed in bad faith. *See id.* ("Our decisions in related areas have stressed the importance for constitutional purposes of good or bad faith on the part of the Government when the claim is based on loss of evidence attributable to the Government."). To establish bad faith, a petitioner must show that the unpreserved evidence "possessed exculpatory value that was apparent before it was destroyed and that it was of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *California v. Trombetta*, 467 U.S. 479, 489 (1984); *United States v. Greenberg*, 835 F.3d 295, 303 (2d Cir. 2016) (quoting *Trombetta*, 467 U.S. at 489). Therefore, when none of the information contained in the unpreserved evidence was concealed from a petitioner at his trial, the petitioner fails to show bad faith on the part of the government and the conduct at issue "can at worst be described as negligent." *Youngblood*, 488 U.S. at 58; *see also United States v. Barnes*, 411 F. App'x 365, 368 (2d Cir. 2011) (holding that the police did not act in bad faith when they destroyed DNA evidence because the government tested the DNA and the defendant "could have challenged the DNA expert's results by way of cross-examination"); *United States v. Rastelli*, 870 F.2d 822, 833 (2d Cir. 1989) (holding that the police did not act in bad faith when they destroyed tapes of the defendant's conversations with a confidential informant because the defendant had access to the police summaries of the recorded conversations and "could have called as a witness [the police officer] who monitored the taped conversations"). A petitioner's "[f]ailure to satisfy any of these requirements, including a failure to show the Government's bad faith, is fatal to a . . . spoliation [claim]." *Greenberg*, 835 F.3d at 303 (citations omitted).

The Appellate Division could have reasonably concluded that Petitioner's Fourteenth Amendment claim fails because Petitioner cannot establish that the Officer Aleica discarded the scratch report in an attempt to cover up or conceal relevant evidence. Officer Aleica discarded the scratch report at the behest of his supervisor after his supervisor instructed him to include information different from the information Luciano reported — that the assailants wore masks instead of covering the bottom portion of their faces with their jackets. (T. 99:19–101:4, 104:8–106:12, 118:12–24, 119:2–10.) At trial, Officer Aleica testified to those facts. (*Id.*) Luciano also testified that he never told any officers that the assailants wore masks. (T. 47:17–48:10; 79:1–7, 81:23–82:1.) In addition, Petitioner's trial counsel questioned Officer Aleica about the information contained in the scratch report, indicating that he was aware of the information contained in the scratch report. (T. 97:12–106:12.) Because Officer Aleica testified to differences in the information contained in the scratch report and the final typewritten report and it appears that Petitioner's trial counsel was aware of the information in the scratch report, neither Officer Aleica's actions nor the actions of his supervisor show that the scratch report was discarded in bad faith. *See Youngblood*, 488 U.S. at 58 (holding that a defendant failed to show that the state acted in bad faith when it failed to preserve evidence because the police conduct "can at worst be described as negligent [since] [n]one of th[e] information was concealed from respondent at trial"); *Rastelli* 870 F.2d at 833 (holding that a defendant failed to show that the police acted in bad faith when they destroyed tapes of the defendant's conversations with a confidential informant because the defendant had access to the police summaries of the recorded conversations and "could have called as a witness [the police officer] who monitored the taped conversations"); *see also Barnes*, 411 F. App'x at 368 (holding that a defendant failed to show that the police acted in bad faith when they destroyed DNA evidence because the government

tested the DNA and the defendant "could have challenged the DNA expert's results by way of

cross-examination").  Nor has Petitioner shown that the scratch report possessed "exculpatory

value that was apparent before it was destroyed." *Trombetta*, 467 U.S. at 489.  Indeed, the

typewritten report likely undermined Luciano's identification more than the scratch report, since

it is probably more difficult to identify individuals who wore masks than individuals who

covered only the bottom portion of their faces with their clothing.  Accordingly, the Appellate

Division's decision denying Petitioner's failure-to-preserve-evidence claim was not "beyond the

possibility of fairminded disagreement."[4]  *Richter*, 562 U.S. at 102.

### 3. Petitioner's Confrontation Clause claim is unexhausted and procedurally defaulted

Petitioner argues that the unavailability of the scratch report violated the Sixth

Amendment's Confrontation Clause.  (Pet'r Obj. 2–6.)  However, because this claim is

unexhausted and procedurally defaulted, the Court cannot review the claim.

A state prisoner seeking federal habeas review must first exhaust available state court

remedies.  28 U.S.C. § 2254(b)(1)(A); *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011) ("Section

2254(b) requires that prisoners must ordinarily exhaust state remedies before filing for federal

habeas relief.").  "This requires that the prisoner fairly present his constitutional claim to the

state court, which he accomplishes by presenting the essential factual and legal premises of his

---

[4] Liberally construing Petitioner's Fourteenth Amendment arguments as an assertion that the State committed a *Brady* violation by failing to disclose the scratch report, the Court cannot grant Petitioner's requested relief based on a due process violation under *Brady v. Maryland*, 373 U.S. 83 (1963).  A *Brady* claim requires a showing that a prosecutor withheld material evidence. *See United States v. Hsu*, 669 F.3d 112, 117 & n.2 (2d Cir. 2012) ("Evidence is not suppressed within the meaning of *Brady* if the defendant or his attorney . . . knew . . . of the essential facts permitting him to take advantage of that evidence." (citation omitted)).  Here, the record reflects that the Petitioner's trial counsel "knew of the essential facts permitting him to take advantage" of the information contained in the scratch report as he questioned Officer Aleica about the information contained in the scratch report.  (T. 97:12–106:12.)

federal constitutional claim to the highest state court capable of reviewing it." *Jackson v. Conway*, 763 F.3d 115, 133 (2d Cir. 2014) (citation and internal quotation marks omitted). "While a state prisoner is not required to cite chapter and verse of the Constitution in order to satisfy this requirement, he must tender his claim in terms that are likely to alert the state courts to the claim's federal nature." *Id.* (citation and internal quotation marks omitted). If a prisoner returned to the state courts to file the unexhausted claims and the state courts would refuse to hear those claims due to a state procedural rule, the claims are procedurally defaulted and not subject to federal review. *Id.*

Petitioner argued to the Appellate Division that "the court denied [him] his right to a fair trial when it refused to give an adverse inference charge against the people based on the destruction of the original complaint report, which was clearly *Rosario* material. U.S. Const., Amend. XIV; N.Y. Const., Art. 1, § 6." (Pet'r App. Div. Br. 16.) In the petition to the Court and the objections to the R&R, Petitioner asserts that the destruction of the scratch report violated the Sixth Amendment Confrontation Clause. (Am. Pet. 15; Pet'r Obj. 3.) Thus, because Petitioner did not raise the Confrontation Clause claim based on the destruction of the scratch report to the Appellate Division, the Confrontation Clause claim is unexhausted. Petitioner's briefing to the Appellate Division failed to "tender his claim in terms that are likely to alert the state court[] of the claims['] federal nature," notwithstanding Petitioner's Fourteenth Amendment claims. *Jackson*, 763 F.3d at 133.

The Confrontation Clause claim is also procedurally defaulted because the New York State courts would decline to hear the merits of the claim. While New York State law provides for collateral review of a conviction under Criminal Procedure Law section 440.10, such review is not available if the claim could have been raised on direct review. *See* N.Y. Crim. Proc. Law

§ 440.10(2)(a), (c); *see also Jackson*, 763 F.3d at 143–44 (holding that a petitioner's claim was unexhausted and procedurally defaulted because the claim could have been raised on direct appeal (citing § 440.10(2))). Petitioner can overcome this procedural bar only if he demonstrates "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrates that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Gueits v. Kilpatrick*, 612 F.3d 118, 127 (2d Cir. 2010) (outlining the standards for overcoming procedural default). Petitioner has not alleged any facts to show cause for the default, actual prejudice or a fundamental miscarriage of justice. (*See* Pet'r Obj. 2–6.) Therefore, Petitioner's Confrontation Clause claim is procedurally barred and beyond the scope of federal habeas review.

### ii. Ineffective assistance of counsel

Petitioner advances two arguments in support of his ineffective assistance of counsel claim: (1) Petitioner's trial counsel failed to object to Petitioner's absence at his co-defendant's suppression hearing; and (2) Petitioner's trial counsel failed to object to the jury instructions. (Pet'r Obj. 10–12.)

"The Sixth Amendment right to counsel is the right to effective assistance of counsel." *Buck v. Davis*, 580 U.S. ---, ---, 137 S. Ct. 759, 775 (Feb. 22, 2017) (quoting *Strickland v. Washington*, 466 U.S. 668, 686 (1984)); *see also Premo v. Moore*, 562 U.S. 115, 121 (2011). "A defendant who claims to have been denied effective assistance must show both that counsel performed deficiently and that counsel's deficient performance caused him prejudice." *Buck*, 580 U.S. at ---, 137 S. Ct. at 775 (citing *Strickland*, 466 U.S. at 687). "Recognizing the 'tempt[ation] for a defendant to second-guess counsel's assistance after conviction or adverse sentence,' . . . counsel should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Cullen*, 563

U.S. at 189 (alteration in original) (quoting *Strickland*, 466 U.S. at 689–90); *see also Bierenbaum v. Graham*, 607 F.3d 36, 50–51 (2d Cir. 2010) (stating that the *Strickland* standard is "highly deferential" to eliminate the "distorting effects of hindsight"). The "highly deferential" *Strickland* standard is made "doubly so" on habeas review, as AEDPA requires deference to the state court's ruling. *Premo*, 562 U.S. at 122; *accord Santone v. Fischer*, 689 F.3d 138, 154 (2d Cir. 2012). Thus, on habeas review, "the question is not whether counsel's actions were reasonable . . . [but] whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105. "Surmounting *Strickland*'s high bar is never an easy task." *Id.* (citing *Padilla v. Kentucky*, 559 U.S. 356, 371, (2010)).

As discussed further below, neither of Petitioner's arguments demonstrate that the Appellate Division's decision denying the ineffective assistance of counsel claims was "contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court." *Richter*, 562 U.S. at 98.

### 1. Petitioner's ineffective assistance of counsel claims were adjudicated on the merits

As a threshold matter, the Court must determine whether AEDPA deference applies to the Appellate Division's decision regarding Petitioner's ineffective assistance of counsel claims. *See Berghuis v. Thompkins*, 560 U.S 370, 390 (2010) ("Courts cannot grant writs of habeas corpus under § 2254 by engaging in *de novo* review when it is unclear whether AEDPA deference applies. In those situations, courts must resolve whether AEDPA deference applies, because if it does, a habeas petitioner may not be entitled to a writ of habeas corpus under § 2254(d)." (citation omitted)). Petitioner raised his ineffective assistance of counsel claims before the Appellate Division, alleging a violation of his Sixth Amendment rights. (Pet'r. Suppl. App. Div. Br. 10–20, Docket Entry No. 4-3.) While the Appellate Division discussed the New York

standard for ineffective assistance of counsel, *see Bogan*, 78 A.D.3d at 856, the use of the phrase "meaningful representation," along with the absence of any discussion of a procedural bar on this claim, constitutes an adjudication on the merits of Petitioner's ineffective assistance of counsel claims. *See Gersten v. Senkowski*, 426 F.3d 588, 606 (2d Cir. 2005) (holding that the state court decided the petitioner's ineffective assistance of counsel claim on the merits where the court determined that the defendant received meaningful representation); *see also Eze v. Senkowski*, 321 F.3d 110, 123–24 (2d Cir. 2003); *Lolisco v. Goord*, 263 F.3d 178, 193 (2d Cir. 2001); *Ascencio v. McKinney*, No. 05-CV-1026, 2007 WL 2116253, at *14 (E.D.N.Y. July 20, 2007). Therefore, the Appellate Division's decisions on the ineffective assistance of counsel claims are afforded deference under AEDPA, and Petitioner must establish that the Appellate Division's decision was "an unreasonable application of clearly established federal law." *See Tavarez v. Larkin*, 814 F.3d 644, 648–49 (2d Cir. 2016); *see also Kernan*, 578 U.S. ---, 136 S. Ct. at 1606 (holding that the Ninth Circuit should have viewed the decision of the Supreme Court of California "through AEDPA's deferential lens" where the Supreme Court of California was found to have adjudicated the case on the merits).

> **2. Petitioner's trial counsel was not constitutionally ineffective for failing to object to Petitioner's absence from his co-defendant's suppression hearing**

Petitioner contends that his trial counsel was ineffective because he failed to object to Petitioner's absence from his co-defendant's suppression hearing. (Pet'r Obj. 10–11.) Petitioner asserts that the ineffective assistance of counsel claim is viable because "there is no Supreme Court case holding that a co-defendant's [suppression] hearing is <u>not</u> a critical stage." (*Id.* at 10.) Petitioner argues that "it was critical for him and his counsel to be present in order to evaluate the witness or witnesses." (*Id.*)

An ineffective assistance of counsel claim may only lie where a defendant had a Sixth Amendment right to counsel. *See Coleman*, 501 U.S. at 752. The Sixth Amendment right to counsel attaches at all "critical stage[s]" of the criminal proceedings. *Marshall v. Rogers*, 569 U.S. ---, ---, 133 S. Ct. 1446, 1449 (Apr. 1, 2013); *Mckethan v. Mantello*, 522 F.3d 234, 239 (2d Cir. 2008) (holding that the right to counsel "extends only to critical stages of the proceedings." (citing *Iowa v. Tovar*, 541 U.S. 77, 80–81 (2004)). If a proceeding is not a "critical stage" of the criminal case, then the defendant does not have a Sixth Amendment right to counsel or a Sixth Amendment right to be present at the proceeding to assist his counsel. *Mckethan*, 522 F.3d at 238–39 (first citing *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987); and then citing *Tovar*, 541 U.S. at 80–81 (2004)). "[A] critical stage [i]s one that held significant consequences for the accused." *Woods v. Donald*, 575 U.S. ---, ---, 135 S. Ct. 1372, 1375–76 (Mar. 30, 2015). Critical stages include a defendant's trial, *United States v. Cronic*, 466 U.S. 648, 653–54 (1984), as well as the defendant's "arraignment [], post-indictment interrogations, post-indictment lineups, [] entry of a guilty plea, . . . plea negotiations," *Missouri v. Frye*, 566 U.S. 133, 140–41 (2012), sentencing, *Gardner v. Florida*, 430 U.S. 348, 358 (1977), and post-trial motion practice, *Rogers*, 569 U.S. at ---, 133 S. Ct at 1449. "[C]ourts may presume that a defendant has suffered unconstitutional prejudice if he was denied counsel at a critical stage of his trial." *Woods*, 575 U.S. at ---, 135 S. Ct. at 1377 (quoting *Cronic*, 466 U.S. at 658–59).

The Appellate Division's decision regarding the ineffective assistance of counsel claim was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent. The Appellate Division held that Petitioner "did not have a constitutional right to counsel at his codefendant's [suppression] hearing because that proceeding was not a critical stage of his trial." *Bogan*, 78 A.D.3d at 855 (citations and internal quotation marks omitted). As

Petitioner points out, the Supreme Court has never held that a co-defendant's suppression hearing constitutes a critical stage of a defendant's criminal proceedings. (*See* Pet'r Obj. 10.) Therefore, the Appellate Division's decision cannot be contrary to, or an unreasonable application of, clearly established Supreme Court precedent. *See Woods*, 575 U.S. at ---, 135 S. Ct. at 1377 (reversing the court of appeals' decision granting habeas relief because the Supreme Court has never held that a hearing where the "prosecution [presented] testimony *about other defendants*" was a critical stage and therefore "the state court's decision could not be contrary to any holding from [the Supreme] Court" (citation and internal quotation marks omitted)); *Wright v. Van Patten*, 552 U.S. 120, 126 (2008) ("Because our cases give no clear answer to the question presented . . . it cannot be said that the state court unreasonably applied clearly established Federal law." (alterations, citations and internal quotation marks omitted)); *Smith v. Wenderlich*, 826 F.3d 641, 649 (2d Cir. 2016) ("When there is no Supreme Court holding on a given issue, it cannot be said that the state court unreasonably applied clearly established Federal Law within the meaning of AEDPA." (alterations, citations and internal quotation marks omitted)).[5]

---

[5] Liberally construing Petitioner's arguments, Petitioner also appears to claim that his absence from his co-defendant's suppression hearing violated his right to due process. (*See* Pet'r Obj. 10 ("Petitioner's presence at this critical stage of the criminal proceedings would constitute the fairness of the procedure.").) A defendant has "a due process right to be present in [] person whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge." *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987) (citation and internal quotation marks omitted). At the suppression hearing, Petitioner's co-defendant sought to suppress Luciano's identification of himself, not Luciano's identification of Petitioner. (H. 31–35.) Therefore, Petitioner's claim lacks merit because his presence at his co-defendant's suppression hearing had no "relation, reasonably substantial, to the fullness of his opportunity to defend against the charge." *Stincer*, 482 U.S. at 745; *see also Monroe v. Kulman*, 433 F.3d 236, 246–47 (2d Cir. 2006) (affirming dismissal of a habeas petition because the benefit of petitioner's presence during an uncritical part of the proceedings was "speculative and likely to be minimal").

### 3. Petitioner's trial counsel was not constitutionally ineffective for failing to object to the supplemental jury instructions

Petitioner contends that his trial counsel was ineffective for failing to object to the supplemental jury instructions and for failing to request instructions that were more accurate and complete. (Pet'r Obj. 11.) During deliberations, the jury sent a note to the trial judge asking if it was "allowed to reach a decision based solely on the testimony of one witness." (T. 248:3–8.) The trial judge discussed the jury's note with the State and Petitioner's trial counsel. (T. 248:9–252:22.) The trial judge informed the parties that he intended to reply to the jury's note by restating his earlier instruction on one-witness identification testimony. (T. 248:9–16.) Petitioner's trial counsel requested that the trial judge also instruct the jury that "each juror should hold to their verdict if they feel that there is a doubt. . . . It's their right to hold to their verdict if they feel it is a reasonable verdict." (T. 248:21–249:12.) The trial judge declined the suggestion by Petitioner's counsel and reread the earlier instruction regarding one-witness testimony to the jury. (T. 249:12–252:22.) Petitioner, citing to the New York Model Criminal Jury Instructions (CJI) for support, asserts that the instructions were erroneous because they "allowed the jury to convict based on [a] finding that the victim truthfully believed [P]etitioner and his codefendant were the perpetrators, without concomitantly finding his identification was accurate." (Pet'r Obj. 7–8 (citation omitted).)

To succeed on an ineffective assistance of counsel claim based on a trial counsel's failure to object to jury instructions, a petitioner must show that the trial counsel's failure to object "fell below an objective standard of reasonableness" and show prejudice — that the outcome of the trial would have been different absent the allegedly deficient representation. *Brown v. Greene*, 577 F.3d 107, 110 (2d Cir. 2009) (quoting *Strickland*, 466 U.S. at 688–89). A petitioner faces an "especially heavy burden" in attempting to prove prejudice on the basis of an allegedly erroneous

jury instruction. *Waddington v. Sarasud*, 555 U.S. 179, 190–91 (2009) (internal quotation marks omitted); *accord DelValle v. Armstrong*, 306 F.3d 1197, 1200–01 (2d Cir. 2002). A petitioner must show that the instruction was erroneous and must also show that there was "a reasonable likelihood that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt." *Waddington*, 555 U.S. at 191 (citation and internal quotation marks omitted). "[T]he pertinent question is whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Id.* (citation and internal quotation marks omitted). In answering that question, the allegedly erroneous instruction must not be judged in isolation, "but must be considered in the context of the instructions as a whole." *Id.* (citation and internal quotation marks omitted). A trial counsel's failure to object to legally correct jury instructions does not constitute ineffective assistance. *United States v. D'Agostino*, 638 F. App'x 51, 54–55 (2d Cir. 2016); *Hernandez v. Bennett*, 129 F. App'x 642, 644 (2d Cir. 2005).

Petitioner has failed to show that his trial counsel's failure to object "fell below an objective standard of reasonableness," *Brown*, 577 F.3d at 110 (quoting *Strickland*, 466 U.S. at 688–89), because: (1) the instructions were not erroneous, and (2) Petitioner's trial counsel requested a broader supplemental instruction than the one the trial judge ultimately issued.

First, the jury instructions were not erroneous because, viewed as a whole, the instructions adequately informed the jury of the relevant law. The CJI one-witness identification instruction provides:

> The defendant denies that [he/she] is the person who committed the crime of [name of offense] on the [date of occurrence], when the alleged crime(s) occurred. [He/She] is thus raising the issue of mistaken identity.

> Identification is a question of fact for you to decide, taking into consideration all the evidence which you have seen and heard in the

course of the trial. Here, too, the People have the burden of proving beyond a reasonable doubt that the defendant, [name of defendant], was the perpetrator of the crime.

Under our law, the identification of an accused by a single witness as the one involved in the commission of a crime is, in and of itself, sufficient to justify a conviction of such a person, provided, of course, that you are satisfied beyond a reasonable doubt of the identity of the accused as the one who committed the crime. If, on the other hand, you are not convinced beyond a reasonable doubt that the defendant, [name of defendant], was the person who committed the crime, then you must find [him/her] not guilty. . . .

1 Charges to Jury & Requests to Charge in Crim. Case in N.Y. § 4:48 (2016). Contrary to Petitioner's assertions, the language of the instructions given by the trial judge tracked the language of the CJI one-witness identification instruction and informed the jury that they had to find, beyond a reasonable doubt, that Luciano correctly identified Petitioner. The instructions given by the trial judge stated, in relevant part:

Keep in mind that under our law it is not the quantity of the testimony that matters, it's not the number of witnesses who testify for one side or the other that makes any difference; it's the quality of the testimony that counts.

Under our law, the testimony of even one witness is sufficient to support a guilty verdict if you believe it beyond a reasonable doubt. . . .

Now, as you have become aware, the chief issue at this trial is the identification of these defendants as the perpetrators. As I just told you, the burden is on the prosecution to prove the defendant's guilt beyond a reasonable doubt.

Even if you are convinced that a serious crime has taken place here, this does not end your deliberations. You must also be satisfied, beyond a reasonable doubt, that these defendants are the persons who committed the crime. . . .

You must consider with great care all of the evidence on the issue of identity and you must be convinced beyond a reasonable doubt that each of these defendants is the right person.

(T. 230:1–8, 233:1–16.)  In response to the jury's note concerning one-witness identification, the trial judge issued a supplemental instruction, repeating a portion of the initial instruction and stating that:

> As I told you before, it makes no difference the number of witnesses who testify for one side or the other.  It's not the quantity of testimony that counts; it's the quality.  Under our law, the testimony of one witness is sufficient to support a guilty verdict if you believe it beyond a reasonable doubt.

(T. 251: 9–20.)  Viewing the instructions as a whole, Petitioner has therefore failed to meet the "especially heavy burden" of showing that the instructions were erroneous.  *Waddington*, 555 U.S. at 191 (holding that the state court's instructions were not erroneous because the "instruction parroted the language of the statute"); *see also DelValle*, 306 F.3d at 1201 ("Where a trial court repeatedly emphasizes the state's burden of proof, a single instruction taken in isolation . . . does not constitute grounds for habeas relief." (citation omitted)).  Petitioner's trial counsel did not render constitutionally ineffective representation by failing to object to jury instructions that were legally correct.  *See D'Agostino*, 638 F. App'x at 54–55; *Hernandez*, 129 F. App'x at 644.

Second, the performance by Petitioner's trial counsel did not "f[a]ll below an objective standard of reasonableness."  *Brown*, 577 F.3d at 110 (quoting *Strickland*, 466 U.S. at 688–89).  Under *Strickland*, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Brown*, 577 F.3d at 110 (quoting *Strickland*, 466 U.S. at 688–89).  Petitioner's trial counsel requested that the trial judge give a broader instruction in response to the jury's note.  (T. 248:21–249:12.)  Petitioner contends that his trial counsel's request for a broader instruction was "meaningless" and "could not benefit [P]etitioner."  (Pet'r Obj. 11.)  Petitioner's trial counsel could have raised a formal objection to the supplemental jury instruction instead of requesting a broader instruction, but his trial counsel's decision did not

"amount to incompetence under prevailing professional norms," *Richter*, 562 U.S. at 105,

because Petitioner's trial "counsel's failure to object . . . and request a curative instruction"

constitutes "a reasonable tactical decision," *United States v Spruill*, 808 F.3d 585, 600 (2d Cir.

2015).

For the reasons stated above, the Appellate Division's decision denying Petitioner's

ineffective assistance of counsel claim was not contrary to, or an unreasonable of, Supreme

Court precedent.

### iii.   Petitioner's challenge to the supplemental jury instruction is procedurally barred.

As previously discussed, Petitioner contends that the jury instructions were erroneous

because the supplemental instruction failed to state that Luciano's identification of Petitioner as

one of the assailants had to be accurate beyond a reasonable doubt.  (Pet'r Obj. 7–10.)  The

Appellate Division held that Petitioner's claim challenging the jury instructions was

"unpreserved for the appellate review."  *Bogan*, 78 A.D.3d at 855 (citing N.Y. Crim. Proc. Law

§ 470.05(2)).  Alternatively, the Appellate Division dismissed the claim on the merits because "in

any event, . . . [t]he charge, taken as a whole, adequately instructed the jury as to the burden of

proof, was a correct statement of the law, and sufficiently apprised the jury on weighing the

credibility of witnesses."  *Id.* at 855–56 (citations omitted).

Federal courts are generally not permitted to "review questions of federal law presented

in a habeas petition when the state court's decision rests upon a state-law ground that 'is

independent of the federal question and adequate to support the judgment.'"  *Cone v. Bell*, 556

U.S. 449, 465 (2009) (quoting *Coleman*, 501 U.S. at 729).  A state law ground is deemed

"adequate" if the rule "is firmly established and regularly followed by the state in question."

*Whitley v. Ercole*, 642 F.3d 278, 286 (2d Cir. 2011) (quoting *Garcia v. Lewis,* 188 F.3d 71, 77 (2d Cir. 1999)).

It is well-settled that New York's contemporaneous objection rule is an adequate and independent ground that bars federal habeas review.[6]  *Downs v. Lape*, 657 F.3d 97, 104 (2d Cir. 2011) ("[W]e have held repeatedly that the contemporaneous objection rule is a firmly established and regularly followed New York procedural rule."); *Garcia*, 188 F.3d at 79 ("[W]e have observed and deferred to New York's consistent application of its contemporaneous objection rules."); *see also Kozlowski v. Hulihan*, 511 F. App'x 21, 25 (2d Cir. 2013) ("[T]he contemporaneous objection rule provides an independent state-law ground for barring federal habeas review."); *Wright v. Lee*, No. 12-CV-6140, 2013 WL 1668266, at *2 (E.D.N.Y. Apr. 17, 2013) ("It is well settled that New York's contemporaneous objection rule . . . is an independent and adequate state law ground that ordinarily precludes federal habeas corpus review.").

---

[6]  New York's contemporaneous objection rule provides:

> For purposes of appeal, a question of law with respect to a ruling or instruction of a criminal court during a trial or proceeding is presented when a protest thereto was registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same. Such protest need not be in the form of an "exception" but is sufficient if the party made his position with respect to the ruling or instruction known to the court, or if in reponse [sic] to a protest by a party, the court expressly decided the question raised on appeal. In addition, a party who without success has either expressly or impliedly sought or requested a particular ruling or instruction, is deemed to have thereby protested the court's ultimate disposition of the matter or failure to rule or instruct accordingly sufficiently to raise a question of law with respect to such disposition or failure regardless of whether any actual protest thereto was registered.

N.Y. Crim. Proc. Law § 470.05(2).

"[W]hen a state court says that a claim is 'not preserved for appellate review' but then rules 'in any event' on the merits, such a claim is procedurally defaulted." *Green v. Travis*, 414 F.3d 288, 294 (2d Cir. 2005) (quoting *Glenn v. Bartlett*, 98 F.3d 721, 725 (2d Cir. 1996)); *Young v. New York*, No. 11-CV-0110, 2012 WL 6644993, at *12 (E.D.N.Y. Dec. 20, 2012) ("When a state court relies on an independent and adequate state law ground — such as, in this case, failure to preserve the issue for appeal — federal habeas review is foreclosed. This is true even if the state court rules in the alternative on the merits of petitioner's claims." (citations omitted)).

A federal court may review a claim that is procedurally barred by an independent and adequate state ground if "the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750; *see also House v. Bell*, 547 U.S. 518, 536 (2006) ("As a general rule, claims forfeited under state law may support federal habeas relief only if the prisoner demonstrates cause for the default and prejudice from the asserted error . . . . The bar is not, however, unqualified . . . . [T]he Court has recognized a miscarriage-of-justice exception." (citations omitted)); *Rush v. Lempke*, 500 F. App'x 12, 15 (2d Cir. 2012) ("When a petitioner 'has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.'" (quoting *Coleman*, 501 U.S. at 750)).

"The cause requirement is met if some objective factor, external to [the] [p]etitioner's defense, interfered with his ability to comply with the state's procedural rule." *Gutierrez v. Smith*, 702 F.3d 103, 111 (2d Cir. 2012); *see also Maples v. Thomas*, 565 U.S. ---, ---, 132 S. Ct.

912, 922 (Jan. 18, 2012); *Lawson v. McGinnis*, No. 04-CV-2345, 2013 WL 789173, at *9 (E.D.N.Y. Mar. 1, 2013). "There is no doubt that ineffective assistance of counsel can serve a cause to excuse procedural default." *Tavarez*, 814 F.3d at 650 (citing *Edwards v. Carpenter*, 529 U.S. 446, 450–51 (2000)). But a petitioner is still required to prove that "he suffered actual prejudice as a result of the alleged violation of federal law." *Id.* (citing *Coleman*, 501 U.S. at 750). Prejudice is established when a petitioner is able to show that the alleged errors at trial resulted in "substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Gutierrez*, 702 F.3d at 112 (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)); *see also Torres v. Senkowski*, 316 F.3d 147, 152 (2d Cir. 2003).

A fundamental miscarriage of justice arises when a petitioner "is actually innocent of the crime for which he has been convicted." *Cotto v. Herbert*, 331 F.3d 217, 239 n.10 (2d Cir. 2003) (quoting *Dunham v. Travis*, 313 F.3d 724, 729 (2d Cir. 2002)); *see also McQuiggin v. Perkins*, 569 U.S. ---, ---, 133 S. Ct. 1924, 1927 (May 28, 2013) ("[The] fundamental miscarriage of justice exception, is grounded in the 'equitable discretion' of habeas courts to see that federal constitutional errors do not result in the incarceration of innocent persons." (quoting *Herrera v. Collins*, 506 U.S. 390, 404 (1993))).

Petitioner's claim regarding the supplemental jury instruction is procedurally defaulted, and Petitioner has failed to show cause and actual prejudice or a fundamental miscarriage of justice that would allow the Court to excuse the default. Petitioner's claim is procedurally defaulted because Petitioner's trial counsel failed to object to the instructions and the Appellate Division accordingly held that the claim was "unpreserved for appellate review." *See Bogan*, 78 A.D.3d at 855 (citing N.Y. Crim. Proc. Law § 470.05(2)); *see also Kozlowski*, 511 F. App'x at 25 ("[T]he contemporaneous objection rule provides an independent state-law ground for barring

federal habeas review."). Construing Petitioner's arguments to make the strongest arguments possible, Petitioner appears to argue that the default should be excused because his trial counsel was ineffective for failing to object to the supplemental jury instruction. (*See* Pet'r Obj. 11.) An ineffective assistance of counsel claim provides cause for procedural default, but nevertheless, the Court may not excuse Petitioner's default because he has failed to show actual prejudice. *See Tavarez*, 814 F.3d at 649–51 (holding that ineffective assistance of counsel provides cause to excuse a procedural default but affirming the denial of a petition because the petitioner failed to show actual prejudice). As explained above, taken as a whole, the jury instructions correctly stated the law concerning one-witness identification. Consequently, Petitioner's actual prejudice argument fails because Petitioner's trial was not "infect[ed] . . . with error of constitutional dimensions." *Gutierrez*, 702 F.3d at 112.

Even though the Appellate Division alternatively decided Petitioner's claim on the merits, the Court may not review that determination because "when a state court says that a claim is 'not preserved for appellate review' but then rules 'in any event' on the merits, such a claim is procedurally defaulted." *Green*, 414 F.3d at 294 (citation omitted).

### III. Conclusion

For the foregoing reasons, the Court adopts the R&R and denies the petition for a writ of habeas corpus. The Court will not issue a certificate of appealability. *See* 28 U.S.C. § 2253. It is further certified pursuant to 28 U.S.C. § 1915(a) that any appeal would not be taken in good

faith.  *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).  The Clerk of Court is directed to close the case.

SO ORDERED:

s/ MKB
MARGO K. BRODIE
United States District Judge

Dated:  July 6, 2017
        Brooklyn, New York